NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARRISON RESEARCH LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HCRAMERICA, LLC AND HARRISON CLINICAL RESEARCH GROUP GMBH, <br><br> Defendants. | **OPINION** <br><br> Civil Action No.: 09-CV-6326 (DMC-JAD) |

DICKSON, U.S.M.J.

This matter comes before the Court upon motion by Harrison Research Laboratories, Inc. ("Plaintiff") for an order pursuant to FED. R. CIV. P. 12(f) striking a portion of paragraph 12 of defendants Harrison Clinical Research Group GmbH ("HCRG") and HCRAmerica, LLC's ("HCRAmerica") (collectively, "Defendants") Counterclaims and Exhibit B as impertinent and immaterial to the Counterclaims. Defendants oppose the motion. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. Upon consideration of the parties' submissions, and for the reasons stated below, Plaintiff's motion is **denied**.

I.     **THE COMPLAINT AND COUNTERCLAIM**

This matter was commenced by Plaintiff on December 15, 2009. (Compl., ECF No. 1) Plaintiff is the owner of United States Trademark Registration No. 1,977,849 and United States Trademark Registration No. 1,930,069 for the marks HARRISON RESEARCH LABORATORIES,

1

INC. and HRL ("Plaintiff's Mark") under which it performs the services of "clinical research tests and testing of consumer products." (Amend. Compl. ¶¶ 11,12, ECF No. 10) HCRG is a German company that has used the name HARRISON CLINICAL RESEARCH in connection with clinical trials and clinical studies in Europe and other countries outside of the United States. *Id.* at ¶ 14. Plaintiff alleges that after it obtained federal registrations for Plaintiff's Mark, HCRG formed HCRAmerica, which began advertising and providing clinical research services in the United States under the names HARRISON and HARRISON CLINICAL RESEARCH ("Defendants' Marks"). Plaintiff alleges that Defendants used the Defendants' Marks without Plaintiff's consent and despite previously representing to Plaintiff that they would not use the name "Harrison" in connection with Defendants' services in the United States. *Id.* at ¶¶ 6-24.

Plaintiff asserts four claims in its Amended Complaint against Defendants. Plaintiff claims that (1) Defendants' use of the Defendants' Marks in the United States constitutes infringement of Plaintiff's Mark under 15 U.S.C. § 1114; (2) Defendants' use of the Defendants' Marks in the United States constitutes a willful and knowing use of false designations of origin and false descriptions and representations that falsely describe and represent Defendants' services in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125 (a)); (3) Defendants' acts constitute unfair competition under New Jersey common law; and (4) Defendants' misrepresentations to Plaintiff that it would not use the "Harrison" name in connection with services Defendants provides in the United States constitute fraud. *Id.* at ¶¶ 27-52.

Defendants filed an Answer to the Amended Complaint on March 1, 2010. (Ans., ECF No. 11) On September 27, 2010, with leave of the Court and the consent of Plaintiff, Defendants filed an Amended Answer raising eleven separate defenses and asserting three Counterclaims against Plaintiff. (Amend. Ans., ECF No. 23)

2

In their Counterclaims, Defendants allege that they provide services that are different from the services provided by Plaintiff and that the services "are provided through different channels of trade to different classes of customers." (Amend. Ans., Counterclaims ¶ 11, ECF No. 23). Defendants allege that they are not competitors with Plaintiff and there is no likelihood of confusion between Plaintiff's use of the mark "Harrison Research Laboratories, Inc." and Defendants' use of the names "Harrison Clinical Research," "Harrison Clinical Research Group" and "Harrison." *Id.* at ¶¶ 1, 11. Defendants allege, however, that, in the event that it is found that the services provided by Plaintiff and Defendants are similar and, thus, are competitive, then Defendants are likely to be injured by several false or misleading statements in Plaintiff's advertising material. *Id.* at ¶¶ 1, 12-19.

Specifically, Defendants allege, upon information and belief, that

> Both on its website and in its brochure, [Plaintiff] claims that '[Plaintiff] has passed numerous USA FDA [Food & Drug Administration] audits.' In fact, upon information and belief, [Plaintiff] has been subject to very few audits, <u>and to one audit by the US Environmental Protection Agency ("EPA"), which occurred in the 1990s. That EPA audit resulted in [Plaintiff's] pleading guilty to the felony of obstruction of an EPA audit under 18 U.S.C. §§ 1505 and 2, for which [Plaintiff] was subject to a fine of $104,000.00. That same EPA audit resulted in a plea of guilty by [Plaintiff's] President, Lynne Harrison, to testing pesticides on subjects without their informed consent, in violation of 7 U.S.C. § 136(a)(2)(P) and 18 U.S.C. § 2. Ms. Harrison was fined $5,000.00 for this offense. Copies of the criminal judgments against [Plaintiff] and Ms. Harrison are attached to these Counterclaims as combined Exhibit B.</u>

*Id.* at ¶ 12. (Emphasis added) Defendants also allege that Plaintiff's brochure, which is available on Plaintiff's website, states that "[Plaintiff] performs the full range of human testing" and that "Phase III tests are performed on such drugs as anti-fungals, acne products and other topically applied pharmaceuticals," even though Plaintiff performs only a limited range of tests and has not conducted a Phase III test in a number of years. *Id.* at ¶¶ 13,14.

3

Defendants allege that the "false and misleading statements made by [Plaintiff] have a tendency to deceive a substantial portion of the audience to which they are directed, and are material in that they are likely to influence decisions concerning the selection of testing facilities for consumer products." *Id.* at ¶ 16. Accordingly, Defendants allege that if Defendants are found to offer and provide similar and competitive services to those provided by HRL, Defendants are likely injured by Plaintiff's misrepresentations. As a result, Defendants assert claims against Plaintiff for false representation under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), deceptive and unlawful practices under N.J.S.A. 56:4-1, and unfair competition under New Jersey common law. *Id* at ¶¶ 20-31.

### **Plaintiff's Motion**

On October 8, 2010, Plaintiff filed a motion to strike the portions of paragraph 12 and Exhibit B of Defendants' Counterclaims concerning the EPA audit proceedings and the guilty pleas as immaterial and impertinent to the Counterclaims concerning Plaintiff's advertising practices. (Pl. Mot., ECF No. 25) Plaintiff argues that the allegations are meant to embarrass Plaintiff and have no essential or important relationship to Defendants' claims for false advertising since the EPA audit and the related guilty plea by [Plaintiff] are not relevant to whether the statement "HRL passed numerous USA FDA audits" is true or false. (Pl. Br. at 1,4, ECF No. 25-1)

Defendants argue that Plaintiff's alleged "grossly exaggerated claim" that it passed numerous FDA audits and failure to disclose the convictions in connection with the EPA audit "creates a very misleading portrait of its qualifications to prospective study sponsors." *Id.* at 4-5. Defendants argue that the facts of the EPA audit and convictions are relevant information to both their Counterclaims and Plaintiff's patent infringement claims because prior wrongdoings are directly relevant to a study sponsor's decision whether to hire a company such as Plaintiff to participate in clinical trials for products that are

4

subject to FDA pre-market approval, which Defendants claim are the exact services it provides. *Id.* at 4, 10.

In its Reply, Plaintiff's reiterates its argument that the EPA audit and relate convictions are immaterial to Defendants' Counterclaim because their existence has no bearing on whether Plaintiff's statement that it has passed "numerous FDA audits" is false or misleading. (Pl. Reply 1, ECF No. 31) [1]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) provides:

> The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f). Courts have broad discretion in resolving motions to strike. *Hanover Ins. Co. v. Ryan,* 619 F. Supp. 2d 127, 132 (E.D.Pa. 2007) (citing *Cipollon v. Liggett Group, Inc.*, 789 F.2d 181, 185 (3d. Cir. 1986)). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Receivables Purchasing Co., Inc. v. Engineering and Professional Services, Inc.,* 2010 WL 3488135, *2 (D.N.J. Aug. 30, 2010) (quoting *Garlanger v. Verbeke,* 223 F. Supp. 2d 596, 609 (D.N.J.2002)). "[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the

---

[1] Plaintiff also argues that not only the EPA audit and related conviction are irrelevant to Defendants' defenses to Plaintiff's trademark infringement claims, but the evidence of the EPA-related conviction will be inadmissible at trial pursuant to FED. R. EVID. 609 because it is over ten (10) years old. However, admissibility of this evidence at trial for impeachment in defense of the trademark infringement claims is not at issue in this motion, but rather, as Plaintiff notes, is to be raised via appropriate motions *in limine* at a later date. Furthermore, Plaintiff has not demonstrated at this time that the probative value of the conviction does not substantially outweigh its prejudicial effect in order to prevent introduction of the conviction as evidence for impeachment purposes. *See* FED. R. EVID. 609. Finally, as set forth below, because the Court believes that the EPA audit and related conviction is potentially relevant to - and therefore potentially admissible in support of - Defendants' Counterclaims, an analysis of the relevancy of those facts to Plaintiff's trademark infringement claims is unnecessary.

allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Id.* The striking of a pleading is considered a "drastic remedy to be resorted to only when required for the purposes of justice." *Eisai Co. v. Teva Pharmaceuticals, USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)). The moving party must show that the allegations have no possible relation to the controversy, may prejudice the parties, or confuse the issues. *Id.* at 425 (quoting *Tonka Corp.*, 836 F. Supp. at 217). "[O]nly allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Id.* (quoting *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D.Pa. 2004)).

### III. <u>ANALYSIS</u>

Defendants include in their Counterclaims references to the EPA audit and the related conviction to support their claim that Plaintiff's statement that it passed "numerous FDA audits" constitutes false representation under the Lanham Act § 43(a), deceptive and unlawful practice under N.J.S.A. 56:4-12, and violates New Jersey common law unfair competition.[2]

Section 43(a) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any

---

[2] Since the elements of a claim of unfair competition under Section 43(a) of the Lanham Act are essentially the same as for claims of unfair competition under New Jersey statutory and common law, the Court's analysis of the relevancy of the allegations at issue to Defendants' claims under the Lanham Act also apply to Defendants' claims under N.J.S.A. 56:4-1 and New Jersey common law. *See Primepoint, LLC v. PrimePay, Inc.*, 545 F. Supp. 2d 426, 431-2 (D.N.J. 2008) ("Federal trademark infringement and federal unfair competition/ false designation of origin claims are measured by identical standards, as are New Jersey claims for infringement and unfair competition."); *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J.2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law...."); *Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc.*, 952 F. Supp. 1084, 1091 (D.N.J.1997) ("N.J.S.A. 56:4-1 is the statutory equivalent of Section 43(a)(1) of the Lanham Act"); *CSC Holdings, LLC v. Optimum Networks, Inc.*, 2010 WL 3238951, at *9 (D.N.J. Aug. 17, 2010) ("[N.J.S.A. 56:4-1] is equivalent to the federal unfair competition provision contained in Section 43(a) of the Lanham Act, and a claim for unfair competition under New Jersey common law is substantially similar to these statutory claims.").

6

> combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). To assert a claim for false representation under this provision, a party must demonstrate that either the advertisement is literally false, or it is literally true but misleading to the consumer. *Castrol, Inc. V. Penzoil Co.*, 987 F. 2d 939, 943 (3d Cir. 1993).

In their Counterclaims, Defendants allege that Plaintiff's statement in its brochure and website that it "has passed numerous USA FDA [Food & Drug Administration] audits" is "literally false and misleading." (Amend. Ans., Counterclaims ¶¶ 12,15, ECF No. 23) Defendants allege that this statement is literally false because, in fact, Plaintiff has been subject to very few FDA audits. *Id.* at ¶ 12. The added reference to the EPA audit and the related convictions supports the claim that the statement – whether true or false - is also misleading to potential study sponsors because it omits potentially relevant and important information. *Id.* at ¶ 12.

When arguing a motion to strike, the plaintiff has a duty to demonstrate that the challenged allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . the allegations confuse the issues." *Tonka*, 836 F.Supp. at 217. Here, it cannot be said at this early stage in the litigation that the conviction and EPA audit "have no possible relation" to

7

Defendants' false representation, deceptive and unlawful practice and unfair competition claims.[3] In this case, a third party could assume based on the statement that Plaintiff has passed numerous FDA audits that Plaintiff has also successfully passed other types of audits, including EPA audits. Moreover, if the potential clients found it relevant and important that Plaintiff had passed numerous audits by one federal government agency (the FDA) – which Plaintiff purportedly believed a third party would find it important and relevant since Plaintiff included the information in its brochure and website – then the potential clients may also find it important and relevant that Plaintiff had been subject to criminal proceedings in connection with another federal government agency's (the EPA) audit. As such, a third party could assume that if Plaintiff disclosed the fact that it had passed FDA audits, it also would have disclosed the fact that it had been subject to a criminal proceeding in connection with an EPA audit. Because Plaintiff didn't, the third party could assume that Plaintiff had not been subject to any such proceedings.

Finally, striking the allegations would not save time or expenses litigating issues that will not affect the outcome of this litigation since the facts recited in the allegations regarding the EPA audit and subsequent conviction are not in dispute. Although evidence of the conviction for impeachment and/or other purposes in connection with Defendants' defense of Plaintiff's trademark infringement claims may eventually be subject to motions *in limine*, the potential time and/or expense associated with those motions do not outweigh the Court's disfavor of motions to strike, particularly where the allegations are potentially relevant to Defendants' Counterclaims.

---

[3] Although not expressly argued by Plaintiff, the allegations regarding the EPA audit and related conviction also are unlikely to cause any prejudice to Plaintiff. *See Flammer v. County of Morris,* 2006 WL 1097449, at * 2 (D.N.J. Apr. 25, 2006). (denying motion to strike allegations that defendant had been arrested, stating that "[i]mplicit in [defendant's] argument, however, is the assumption that the pleadings are read to the jury. They are not. Therefore, there is no real concern for prejudice here.") (internal citations omitted).

8

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike a portion of Defendants' Counterclaims and Exhibit B as impertinent and immaterial is **denied**.

／s／ Joseph A. Dickson
JOSEPH A. DICKSON, U.S.M.J.

Dated: December 20, 2010

cc. Hon. Dennis M. Cavanaugh, U.S.D.J.